******************************************

The "officially released" date that appears near the beginning of each opinion is the date the opinion will be published in the Connecticut Law Journal or the date it was released as a slip opinion. The operative date for the beginning of all time periods for filing postopinion motions and petitions for certification is the "officially released" date appearing in the opinion.

All opinions are subject to modification and technical correction prior to official publication in the Connecticut Reports and Connecticut Appellate Reports. In the event of discrepancies between the advance release version of an opinion and the latest version appearing in the Connecticut Law Journal and subsequently in the Connecticut Reports or Connecticut Appellate Reports, the latest version is to be considered authoritative.

The syllabus and procedural history accompanying the opinion as it appears in the Connecticut Law Journal and bound volumes of official reports are copyrighted by the Secretary of the State, State of Connecticut, and may not be reproduced and distributed without the express written permission of the Commission on Official Legal Publications, Judicial Branch, State of Connecticut.
******************************************

THE BANK OF NEW YORK MELLON *v.*
ACHYUT M. TOPE ET AL.
(SC 20592)

Robinson, C. J., and McDonald, D'Auria,
Mullins and Alexander, Js.

*Syllabus*

The plaintiff bank, N. Co., sought to foreclose a mortgage on certain real
property owned by the named defendant, T, following T's default on a
promissory note secured by the mortgage. The note originally was exe-
cuted in favor of H Co., but, subsequently, it was specially endorsed to
J Co., and H Co. assigned its rights under the mortgage to N Co. The
trial court rendered the first judgment of foreclosure by sale in 2014.
Thereafter, T filed, and the trial court granted, multiple motions to open
the judgment and to extend the sale date. In 2016, the trial court again
rendered a judgment of foreclosure by sale. In response, T filed, among
other motions, several unsuccessful motions to dismiss, claiming that
N Co. lacked standing to bring the foreclosure action because it was
not the holder of the note, thus depriving the trial court of jurisdiction.
T again moved to open the judgment and to extend the sale date, and,
in 2017, the trial court again rendered a judgment of foreclosure by sale
and extended the sale date. Approximately three months later, T filed
a motion to open and vacate the judgment, again arguing that N Co.
lacked standing to commence the action and that the court therefore
lacked jurisdiction. The trial court denied the motion, finding, on the
basis of an affidavit of debt filed by N. Co., that N Co. was the holder
of the note and the mortgage. The Appellate Court upheld the trial
court's denial of T's motion to open and vacate the judgment, concluding
that that motion was an impermissible collateral attack on the judgment
of foreclosure by sale that the trial court had rendered in 2016. Accord-
ingly, the Appellate Court declined to consider T's challenge to the trial
court's subject matter jurisdiction, affirmed the judgment of foreclosure,
and remanded the case for the setting of a new sale date. On the granting
of certification, T appealed to this court. *Held*:

1. The Appellate Court incorrectly concluded that T's motion to open and
   vacate the judgment constituted a collateral attack on the trial court's
   2016 judgment of foreclosure by sale and, accordingly, improperly
   declined to consider T's challenge to the trial court's subject matter
   jurisdiction:

   Although this court has recognized that an impermissible collateral attack
   on a judgment may occur within the same action or proceeding in which
   it was obtained if the judgment has become final and the court that
   rendered the judgment no longer has jurisdiction to open it, a court that
   renders a judgment of foreclosure by sale retains jurisdiction to modify
   the judgment until the foreclosure sale is approved, and, when a court
   opens a judgment of foreclosure by sale to change the sale date or
   otherwise to modify the terms of the sale and then renders a new judg-
   ment, a new, statutory ((Supp. 2022) § 52-212a) four month limitation
   period for opening the judgment begins.

   In the present case, the 2016 judgment of foreclosure by sale was not
   a final judgment because the foreclosure sale had not been approved,
   that judgment was timely opened and modified several times, including
   in 2017, which triggered a new, four month limitation period under § 52-
   212a during which the modified judgment could be opened, insofar as
   T filed his motion to open and vacate the judgment within four months
   of the 2017 judgment, the trial court had jurisdiction to open the judgment
   at that time, and, accordingly, T's motion was not a collateral attack on
   the trial court's 2016 judgment.

2. The judgment of the Appellate Court could not be affirmed on the alterna-
   tive ground that the trial court properly had denied T's motion to open
   and vacate the judgment on the basis that N Co. had standing to enforce
   the note:

In order to establish that N Co. had standing to enforce the note and to foreclose the mortgage, N Co. was required to prove that it was either the holder of the note or otherwise entitled to enforce the note, and this court concluded that N Co. was not the holder of the note because, contrary to the findings of the trial court, the affidavit of debt indicated only that the loan servicer was in possession of the note and not that N Co. was the holder of the note.

Accordingly, as a nonholder in possession of the note, which had been specially endorsed to J Co., N Co. was required to prove that it had acquired the rights of the holder to enforce the instrument by way of transfer, which, in turn, required a showing that the transferor delivered the note to N Co. intending to vest in N Co. the right to enforce the instrument.

In the present case, because the question of N Co.'s standing turned on questions of fact, namely, whether it had been vested with the right to enforce the note, the trial court, instead of denying T's motion to open and vacate the judgment, should have conducted an evidentiary hearing to determine whether N Co. had standing to bring the foreclosure action, and, accordingly, this court reversed the Appellate Court's judgment and remanded the case for further proceedings.

Argued September 9—officially released December 20, 2022*

*Procedural History*

Action to foreclose a mortgage on certain of the defendants' real property, and for other relief, brought to the Superior Court in the judicial district of New Haven, where the defendants were defaulted for failure to appear; thereafter, the named defendant was defaulted for failure to plead; subsequently, the case was tried to the court, *Hon. Thomas J. Corradino*, judge trial referee, who, exercising the powers of the Superior Court, rendered judgment of foreclosure by sale; thereafter, the court, *Hon. Thomas J. Corradino*, judge trial referee, denied the named defendant's motion to open and vacate the judgment, and the named defendant appealed to the Appellate Court, *Elgo* and *Cradle, Js.*, with *Devlin, J.*, dissenting, which affirmed the trial court's judgment, and the named defendant, on the granting of certification, appealed to this court. *Reversed*; *further proceedings*.

*Thomas P. Willcutts*, for the appellant (named defendant).

*Willaim R. Dziedzic*, with whom, on the brief, was *Joseph R. Dunaj*, for the appellee (plaintiff).

*Opinion*

MULLINS, J. The named defendant, Achyut M. Tope,[1] appeals from the judgment of the Appellate Court, which affirmed the trial court's denial of his motion to open and vacate the judgment of foreclosure by sale rendered by the trial court in favor of the plaintiff, The Bank of New York Mellon.[2] In this certified appeal, the defendant claims that the Appellate Court incorrectly concluded that his motion to open and vacate the judgment of foreclosure by sale constituted a collateral attack on an earlier judgment. The defendant further claims that the trial court improperly denied his motion to open, which alleged that the plaintiff did not have standing to bring the foreclosure action.[3]

We agree with the defendant that the Appellate Court incorrectly concluded that his motion to open constituted a collateral attack on an earlier judgment. We also reject the alternative ground that the trial court properly denied the defendant's motion to open, in which he claimed that the trial court lacked subject matter jurisdiction. Accordingly, we reverse the judgment of the Appellate Court and remand the case to that court with direction to remand to the trial court for further proceedings consistent with this opinion.

The record reveals the following relevant factual and procedural history. "On October 31, 2003, the defendant executed a promissory note in the amount of $134,000, payable to HSBC Mortgage Corporation (USA) (HSBC). To secure that note, the defendant mortgaged property located at 387 Sherman Avenue in New Haven (property) to HSBC. The note was later endorsed to 'JPMorgan Chase Bank, as Trustee.' On January 15, 2014, HSBC assigned the mortgage to the plaintiff.

"On July 17, 2014, the plaintiff filed the present action seeking to foreclose on the mortgage. The defendant filed his appearance [as a self-represented party] on October 9, 2014, and, on October 28, 2014, he was defaulted for failing to plead. On November 10, 2014, the court, *Hon. Thomas J. Corradino*, judge trial referee, [rendered] a judgment of foreclosure by sale, with a sale date set for February 7, 2015.

"On January 20, 2015, the defendant filed his first motion to open and extend the sale date. The court granted the motion and set a new sale date for June 20, 2015. The defendant subsequently filed three additional motions to open the foreclosure judgment—on March 9, 2015, August 31, 2015, and January 6, 2016—resulting in further extensions of the sale date. [The sale date was extended to September 26, 2015, February 27, 2016, and April 30, 2016, respectively.] On March 8, 2016, the defendant filed a fifth motion to open, claiming that there was more than $100,000 of equity in the property and [that] he had applied for a loan modification. On April 11, 2016, the court granted the defendant's motion

and vacated the foreclosure judgment.

"On June 17, 2016, the plaintiff filed a motion for a judgment of strict foreclosure. On November 21, 2016, the court, *Avallone, J.*, [rendered] a judgment of foreclosure by sale and set a sale date for February 11, 2017.

"On January 3, 2017, the defendant filed a motion to open and stay the judgment on the ground that he had obtained a financial audit that 'provides strong supporting documentation that the plaintiff does not have standing to pursue a foreclosure action with respect to the property in this action.' The defendant sought to stay this action 'to preserve his rights' because he filed a new action involving additional properties that he owns, which, he claimed, was being removed to federal court.

"On January 4, 2017, the defendant filed a motion for summary judgment alleging, inter alia, that the plaintiff lacked standing to bring this action because the plaintiff failed to show 'the proper chain of ownership, assignment and control of the note and mortgage and property with affidavits from persons with knowledge . . . .' At the February 6, 2017 hearing on the defendant's motion to open, the defendant represented to [Judge Avallone] that the arguments in his motion to open and motion for summary judgment were 'generally' the same. Accordingly, the court allowed the defendant, at his request, to argue his motion for summary judgment at that hearing. Following extensive argument by the defendant, the court denied both of his motions. The court expressly rejected the defendant's challenge to the plaintiff's standing, stating: 'I've given you sufficient opportunity to make your arguments. I don't believe that they hold water.' On March 1, 2017, the defendant filed a motion to reargue both motions, which the court summarily denied.

"On February 10, 2017, the defendant filed a motion to dismiss, again alleging lack of subject matter jurisdiction on the ground that the plaintiff did not have standing to commence this action. On February 27, 2017, the defendant filed another motion to dismiss the action for lack of subject matter jurisdiction, [relying on] the arguments that he previously [had] raised in his motion for summary judgment. On March 24, 2017, the defendant filed a third motion to dismiss, 'in addition to and [in] further [support of]' his prior two motions to dismiss and his motion for summary judgment, for lack of subject matter jurisdiction.

"On April 17, 2017, [Judge Avallone] held a hearing on the defendant's motion to dismiss dated February 27, 2017. At the hearing, the defendant argued that he had two copies of the note [that] were irreconcilably different, thereby proving that the plaintiff was not the holder of the note and therefore did not have standing. The defendant presented those two copies to the court.

The defendant argued: '[T]he original note that I signed . . . which I have asked [for] over and over and over in . . . court, docketed in many times, many motions, many pleadings, has not been shared. And I don't know whether . . . the first time when the court approved . . . the foreclosure sale and the second time when it did, the court must have looked at the two original documents.' In response, the plaintiff presented the original note to the defendant. The defendant acknowledged that his signature was on the original note.

"The court then asked the defendant how the two copies of the note that he had presented were relevant [when] the foreclosure judgment was [rendered] on the basis of the original note. The defendant 'object[ed] [to] whether Judge Corradino had possession of the original note' when he [rendered] the foreclosure judgment in 2014. The court explained to the defendant that it had already heard the defendant's arguments a 'multitude' of times . . . but agreed to review the proceedings that occurred before Judge Corradino in 2014. The court recessed briefly to do so.

"Upon resuming the hearing, the court stated that it had listened to the recording of the proceeding before Judge Corradino in 2014 and explained that '[t]here is nothing out of order . . . in Judge Corradino's actions in the court that day that would lead me to believe that there is any evidence, that there is anything improper as to the documents that were . . . filed.' The court explained to the defendant: 'I've listened to your arguments consistently. You've made an argument about the notes. I don't accept your argument that there is anything inappropriate by there being copies, multiple copies of a note.' The defendant pressed his argument regarding his claimed improprieties with the assignments, and the court responded: 'I have looked at the original note. That's what . . . I'm concerned with. And I'm satisfied that there is nothing inappropriate . . . by this court's action or by the actions of Judge Corradino. And you've presented nothing to me that . . . would . . . make me think otherwise. And so I've denied your motion to dismiss.' The court set a new sale date of August 19, 2017. On April 24, 2017, [Judge Avallone] marked off the defendant's motion to dismiss that was filed on February 10, 2017. On May 1, 2017, the defendant filed another motion to dismiss challenging the plaintiff's standing to pursue this action.

"On May 30, 2017, the court, *Pittman, J.*, held a hearing on the defendant's February 10, 2017 motion to dismiss. At that hearing, the defendant again was afforded the opportunity to present his arguments challenging the plaintiff's standing, the same arguments that he made in his previous motion to dismiss dated February 27, 2017, and his motion for summary judgment. The defendant summarized his argument by again asserting that the plaintiff was not the holder of the note. The

court told the parties that it would consider all of the prior filings regarding standing and indicated that it would issue a written decision. On June 6, 2017, [Judge Pittman] issued a written order denying the February 10, 2017 motion to dismiss. The court explained: 'This motion, [docket entry] #162, was previously considered by Judge Avallone in open court on April 24, 2017. At that time, Judge Avallone marked this motion off, having determined that it raised the same issues as [docket entry] #164, which was denied by Judge Avallone on April 17, 2017 . . . . The court will not continue to revisit issues that have been previously decided and that constitute the law of the case. Moreover, a judgment has [been rendered] in this matter and a motion to dismiss is not properly before the court in the absence of an order granting a motion to open the judgment.'

"On June 28, 2017, the defendant filed a motion to open and to extend the sale date on the ground that he was making progress in his efforts to sell the subject property. The court extended the sale date to October 21, 2017.

"On September 28, 2017, the defendant filed a motion to open and to vacate the judgment of foreclosure by sale, [in which] he again argued that the plaintiff lacked standing to commence this action and [that], consequently, the court lacked subject matter jurisdiction over it, and asked that the action be dismissed 'in its entirety with prejudice.' On October 16, 2017, [Judge Corradino] held a hearing on the defendant's motion, at which the defendant again presented his argument to the court. On October 17, 2017, [Judge Corradino] issued an order denying the defendant's motion to open and vacate the foreclosure judgment." (Footnotes omitted.) *Bank of New York Mellon* v. *Tope*, 202 Conn. App. 540, 542–47, 246 A.3d 4 (2021).

The defendant appealed to the Appellate Court from the trial court's October 17, 2017 denial of his motion to open and vacate the foreclosure judgment. Id., 547. On appeal to that court, the defendant claimed that the trial court incorrectly had denied his motion because the plaintiff lacked standing to pursue foreclosure on the note, and, thus, the trial court lacked subject matter jurisdiction over this action. Id., 547–48.

The Appellate Court majority concluded that the defendant's motion to open constituted an impermissible collateral attack on the foreclosure judgment and, therefore, declined to consider the defendant's challenge to the court's subject matter jurisdiction on the merits.[4] Id., 552. Therefore, the Appellate Court affirmed the judgment of foreclosure and remanded the case for the setting of a new sale date. Id. This appeal followed.

On appeal to this court, the defendant claims that the Appellate Court improperly declined to consider his challenge to the trial court's subject matter jurisdiction

because the Appellate Court incorrectly had concluded that the motion to open filed in September, 2017, constituted a collateral attack on the judgment of foreclosure by sale that the trial court had rendered in November, 2016. The plaintiff responds that, pursuant to General Statutes (Supp. 2022) § 52-212a,[5] because the defendant's motion to open was not filed within four months of the November, 2016 judgment of foreclosure by sale, the trial court lacked jurisdiction to entertain the motion. As a result, the plaintiff contends, the Appellate Court properly declined to consider the merits of the defendant's motion to open because it correctly concluded that the defendant's motion to open was a collateral attack on the judgment of foreclosure by sale. We agree with the defendant.

It is undisputed that "[a] collateral attack on a judgment is a procedurally impermissible substitute for an appeal." (Internal quotation marks omitted.) *Joe's Pizza, Inc.* v. *Aetna Life & Casualty Co.*, 236 Conn. 863, 876, 675 A.2d 441 (1996). Generally, there are two types of impermissible collateral attacks on a judgment. First, "[a] collateral attack is an attack [on] a judgment, decree or order offered in an action or proceeding other than that in which it was obtained, in support of the contentions of an adversary in the action or proceeding . . . ." (Internal quotation marks omitted.) *Warner* v. *Brochendorff*, 136 Conn. App. 24, 32 n.7, 43 A.3d 785, cert. denied, 306 Conn. 902, 52 A.3d 728 (2012); see also *Gennarini Construction Co.* v. *Messina Painting & Decorating Co.*, 15 Conn. App. 504, 511, 545 A.2d 579 (1988). Second, this court has also recognized that an attack on a judgment within the same action or proceeding in which it was obtained can be a collateral attack if the judgment has become final and the court that rendered the judgment no longer has jurisdiction to open it. See, e.g., *Sousa* v. *Sousa*, 322 Conn. 757, 763, 789, 143 A.3d 578 (2016) (denying defendant's motion to open and vacate modified marital dissolution judgment four years after modification as impermissible collateral attack); *In re Shamika F.*, 256 Conn. 383, 398–99, 408, 773 A.2d 347 (2001) (rejecting father's challenge to order of temporary custody that had been issued three years prior as impermissible collateral attack); *Vogel* v. *Vogel*, 178 Conn. 358, 360, 364, 422 A.2d 271 (1979) (rejecting plaintiff's challenge to nineteen year old marital dissolution judgment as impermissible collateral attack); *Monroe* v. *Monroe*, 177 Conn. 173, 174, 181–82, 413 A.2d 819 (rejecting plaintiff's challenge to five year old marital dissolution judgment as impermissible collateral attack), appeal dismissed, 444 U.S. 801, 100 S. Ct. 20, 62 L. Ed. 2d 14 (1979).

Neither party asserts that the defendant's motion to open is a collateral attack because it was brought in a separate action or proceeding. Instead, the parties' disagreement centers around whether the trial court had jurisdiction over the July, 2017 judgment pursuant

to § 52-212a at the time the motion to open was filed on September 28, 2017. The defendant argues that, because title had not passed, the judgment of foreclosure by sale rendered in November, 2016, was not a final judgment. Therefore, the trial court had jurisdiction under § 52-212a to address his motion to open for four months after it opened, modified and rendered the judgment on July 3, 2017. Given that he filed his motion to open in September, 2017, which was within four months of the July 3, 2017 judgment, the defendant claims that the trial court still had jurisdiction over the judgment.

In response, the plaintiff contends that the operative judgment is the judgment of foreclosure by sale that the trial court rendered on November 21, 2016, not the judgment rendered on July 3, 2017. The plaintiff asserts that, because the July 3, 2017 judgment only modified or altered incidental terms of the judgment, it is not the proper judgment from which to determine the court's jurisdiction pursuant to § 52-212a. As a result, the plaintiff argues, the November, 2016 judgment of foreclosure by sale was final and the trial court retained jurisdiction for only four months thereafter. Therefore, because the defendant's motion to open was not filed within that four month period, the trial court no longer had jurisdiction to open or modify the judgment of foreclosure by sale. Thus, the plaintiff claims, the Appellate Court correctly concluded that the defendant's motion to open was an impermissible collateral attack on the November, 2016 judgment.

It is important to recognize that the trial court in the present case rendered a judgment of foreclosure by sale. In a foreclosure by sale, the court retains jurisdiction to modify the judgment until the foreclosure sale is approved. See, e.g., *Wells Fargo Bank of Minnesota, N.A.* v. *Morgan*, 98 Conn. App. 72, 79, 909 A.2d 526 (2006) ("[g]enerally, once a court has approved the foreclosure sale and the applicable appeal period has elapsed, the mortgagor's right of redemption is extinguished and the court's jurisdiction to modify that judgment ends"); see also D. Caron & G. Milne, Connecticut Foreclosures (4th Ed. 2004) § 9.01B, p. 203 ("[a]bsent the possibility of an appeal from [the court's] determination, the approval of the sale generally operates to divest the owner of his equity of redemption and consequently places the property beyond the power of the court").

Notwithstanding this well established law, the plaintiff, in support of its claim that the November, 2016 judgment is the operative, final judgment and that the trial court thus lost jurisdiction four months thereafter, relies on *RAL Management, Inc.* v. *Valley View Associates*, 278 Conn. 672, 690, 899 A.2d 586 (2006). The plaintiff's reliance on *RAL Management, Inc.*, is misplaced.

In *RAL Management, Inc.*, this court considered whether an appeal from a judgment of strict foreclosure had become moot because, while the appeal was pend-

ing, the judgment was opened and certain terms were modified. See id., 674. In considering the issue, this court reiterated the principle "that the opening and modification of a judgment triggers a new [limitation] period under which the modified judgment may be opened." Id., 689; see also *Union & New Haven Trust Co.* v. *Taft Realty Co.*, 123 Conn. 9, 15–16, 192 A. 268 (1937) (each opening and modification of judgment to change sale dates was new judgment for purposes of trial court's jurisdiction); *Coxe* v. *Coxe*, 2 Conn. App. 543, 546–48, 481 A.2d 86 (1984) (concluding that modifications to judgment ordering partition by sale of certain real property triggered new, four month period under § 52-212a to file motion to open judgment).

The plaintiff seizes on our statement in *RAL Management, Inc.*, that, for purposes of whether the opening and modification of a judgment has rendered a previous judgment void and the appeal therefrom moot, there is "a substantive distinction between opening a judgment to modify or to alter incidental terms of the judgment, leaving the essence of the original judgment intact, and opening a judgment to set it aside. Under the latter circumstances, the original judgment necessarily has been rendered void and any appeal therefrom would be rendered moot." *RAL Management, Inc.* v. *Valley View Associates*, supra, 278 Conn. 690. Under the former circumstances, when a trial court has made an incidental modification pursuant to a motion to open, the essence of the judgment has not changed and the pending appeal is not moot. Contrary to the plaintiff's contentions, *RAL Management, Inc.*, addresses the effect of a motion to open on a pending appeal; id., 684–85; it does not address the effect of modifying a judgment on the limitation period contained in § 52-212a.

Thus, although we agree with the plaintiff that the difference between a modification of incidental terms of a judgment and setting the judgment aside is relevant to whether an appeal has become moot, we disagree that the distinction has any impact on whether a new limitation period under § 52-212a has begun. Indeed, "[i]t is settled law in Connecticut that when a court opens a judgment of sale to change the sale date or otherwise modify the terms of sale, the modified judgment completely replaces the original judgment and becomes the only valid judgment in the case. *William G. Major Construction Co.* v. *DeMichely*, 166 Conn. 368, 374–75, 349 A.2d 827 (1974); *Union & New Haven Trust Co.* v. *Taft Realty Co.*, [supra, 123 Conn. 15–16]. The modified judgment is 'in essence and substance a new judgment.' [*Union & New Haven Trust Co.* v. *Taft Realty Co.*, supra] 16. Thus, each time the judgment is modified, 'the case [stands] as though [the] judgment as originally entered had never been rendered.' *Milford Trust Co.* v. *Greenberg*, 137 Conn. 277, 279, 77 A.2d 80 (1950) [overruled on other grounds by *RAL Manage-*

*ment, Inc.* v. *Valley View Associates*, 278 Conn. 672, 899 A.2d 586 (2006)]; [see also] *State* v. *Phillips*, 166 Conn. 642, 645–46, 353 A.2d 706 (1974)." *Coxe* v. *Coxe*, supra, 2 Conn. App. 547. Therefore, when a court opens a judgment of foreclosure by sale to change the sale date or otherwise to modify the terms of the sale and renders a new judgment, a new limitation period begins under § 52-212a.

In the present case, we conclude that the November, 2016 judgment was not final because the sale had not been approved and that judgment had been timely opened and modified several times up until July 3, 2017. As a result, when the court rendered the July, 2017 judgment, a new, four month limitation period was triggered, under which the modified judgment could be opened. Therefore, at the time the defendant filed his motion to open the judgment on September 28, 2017, the trial court had jurisdiction to open the judgment under § 52-212a. We thus conclude that the Appellate Court incorrectly concluded that the defendant's motion to open was a collateral attack.

Having concluded that the trial court had jurisdiction to consider the defendant's motion to open, which he filed on September 28, 2017, we now consider whether the judgment of the Appellate Court can be affirmed on the alternative ground that the trial court properly denied the defendant's motion to open, which challenged the subject matter jurisdiction of the court. Specifically, the defendant asserts that the plaintiff does not have standing to enforce the note because the note is specially endorsed to "JPMorgan Chase Bank, as Trustee," and the bank has not proven that it has the authority to enforce the note.[6]

"We have long held that because [a] determination regarding a trial court's subject matter jurisdiction is a question of law, our review is plenary. . . . Moreover, [i]t is a fundamental rule that a court may raise and review the issue of subject matter jurisdiction at any time. . . . Subject matter jurisdiction involves the authority of the court to adjudicate the type of controversy presented by the action before it. . . . [A] court lacks discretion to consider the merits of a case over which it is without jurisdiction . . . ." (Citation omitted; internal quotation marks omitted.) *Peters* v. *Dept. of Social Services*, 273 Conn. 434, 441, 870 A.2d 448 (2005).

"The issue of standing implicates [the] court's subject matter jurisdiction." (Internal quotation marks omitted.) *AvalonBay Communities, Inc.* v. *Orange*, 256 Conn. 557, 567, 775 A.2d 284 (2001). "Standing is the legal right to set judicial machinery in motion. One cannot rightfully invoke the jurisdiction of the court unless he [or she] has, in an individual or representative capacity, some real interest in the cause of action, or a legal or equitable right, title or interest in the subject matter of the controversy. . . . When standing is put

in issue, the question is whether the person whose standing is challenged is a proper party to request an adjudication of the issue . . . ." (Internal quotation marks omitted.) *Tremont Public Advisors, LLC* v. *Connecticut Resources Recovery Authority*, 333 Conn. 672, 688, 217 A.3d 953 (2019). "The plaintiff has the burden of proving standing." *Fink* v. *Golenbock*, 238 Conn. 183, 199, 680 A.2d 1243 (1996).

"[S]tanding to enforce [a] promissory note is [established] by the provisions of the Uniform Commercial Code . . . . [See] General Statutes § 42a-1-101 et seq." (Internal quotation marks omitted.) *Equity One, Inc.* v. *Shivers*, 310 Conn. 119, 126, 74 A.3d 1225 (2013). Under the Uniform Commercial Code, a " '[p]erson entitled to enforce' an instrument means (i) the holder of the instrument, (ii) a nonholder in possession of the instrument who has the rights of a holder, or (iii) a person not in possession of the instrument who is entitled to enforce the instrument pursuant to section 42a-3-309 or 42a-3-418 (d)." General Statutes § 42a-3-301.

The Uniform Commercial Code defines "holder" as "(A) [t]he person in possession of a negotiable instrument that is payable either to bearer or to an identified person that is the person in possession"; "(B) [t]he person in possession of a negotiable tangible document of title if the goods are deliverable either to bearer or to the order of the person in possession"; or "(C) [t]he person in control of a negotiable electronic document of title." General Statutes § 42a-1-201 (b) (21).

General Statutes § 42a-3-205 further provides in relevant part: "(a) If an endorsement is made by the holder of an instrument, whether payable to an identified person or payable to bearer, and the endorsement identifies a person to whom it makes the instrument payable, it is a 'special endorsement'. When specially endorsed, an instrument becomes payable to the identified person and may be negotiated only by the endorsement of that person. . . .

"(b) If an endorsement is made by the holder of an instrument and is not a special endorsement, it is a 'blank endorsement'. When endorsed in blank, an instrument becomes payable to bearer and may be negotiated by transfer of possession alone until specially endorsed. . . ."

As we explained previously, under § 42a-3-301, "[a] person may be a person entitled to enforce the instrument even though the person is not the owner of the instrument . . . ." General Statutes § 42a-3-301. In *J.E. Robert Co.* v. *Signature Properties, LLC*, 309 Conn. 307, 71 A.3d 492 (2013), we explained that "[t]he [Uniform Commercial Code's] official comment underscores that a 'person entitled to enforce an instrument . . . is not limited to holders. . . . A nonholder in possession of an instrument includes a person that acquired rights of

a holder . . . under [General Statutes § 42a-3-203 (a)].' . . . Under § 42a-3-203 (b), '[t]ransfer of an instrument . . . vests in the transferee any right of the transferor to enforce the instrument . . . .' 'An instrument is transferred when it is delivered by a person other than its issuer for the purpose of giving to the person receiving delivery the right to enforce the instrument.' General Statutes § 42a-3-203 (a). Thus, there are two requirements to transfer an instrument under § 42a-3-203 (a): (1) the transferor must intend to vest in the transferee the right to enforce the instrument; and (2) the transferor must deliver the instrument to the transferee so that the transferee has either actual or constructive possession." (Citation omitted; emphasis omitted.) *J.E. Robert Co.* v. *Signature Properties, LLC*, supra, 319–20. Accordingly, to establish standing to foreclose on the defendant's property, the plaintiff needed to prove that it was the holder of the note or one who was otherwise entitled to enforce the note.

In the present case, in its complaint, the plaintiff alleged that the defendant and Geeta A. Joshi-Tope owed HSBC $134,000, as evidenced by a promissory note dated October 31, 2003. The note was not attached to the complaint. The plaintiff also alleged in the complaint that the defendant secured the note by mortgaging the premises known as 387 Sherman Avenue, New Haven, to HSBC. The plaintiff did not attach the mortgage, which was recorded in the New Haven land records, to the complaint. The plaintiff further alleged that HSBC assigned the mortgage "to the Bank of New York Mellon, [formerly known as] The Bank of New York, as Successor to JPMorgan Chase Bank, N.A., as Trustee for Structured Asset Mortgage Investments II, Inc., Bear Stearns ALT-A Trust, Mortgage Pass-Through Certificates, Series 2004-3, by an assignment dated January 15, 2014, and recorded January 23, 2014, in volume 9103 at page 136 of the New Haven land records." The only exhibit that the plaintiff attached to the complaint was the description of the property.

Thereafter, the plaintiff filed an affidavit of debt on November 7, 2014. In that affidavit of debt, Brian Boisen, an assistant vice president of PHH Mortgage Corporation (servicer), averred that the servicer was in possession of the original promissory note for the loan and that payments were due and owing on the note. The plaintiff attached the note as an exhibit to the affidavit of debt. The note was endorsed to "JPMorgan Chase Bank, as Trustee." The plaintiff also attached the corporate assignment of mortgage as part of the exhibit to the affidavit of debt.[7]

In denying the defendant's motion to open challenging the plaintiff's standing, the trial court reasoned: "The affidavit filed by the servicer of the loan [that] was taken out in 2003 and on which no payments have been made since 2013 clearly states that the plaintiff

is the holder of the note and the mortgage—this affidavit was filed under oath in September of 2014. It was filed under oath by a party who would have no apparent interest in falsifying its report. . . . [A]s holder of the note, the plaintiff has standing.”

After reviewing the affidavit of debt, we disagree with the trial court that the affidavit of debt states that the plaintiff is the holder of the note. Instead, in the affidavit of debt, Boisen averred merely that the servicer is in possession of the note. As we have explained herein, being in possession of the note does not make one a “holder” of a note when the note has a special endorsement to a different party. See General Statutes § 42a-1-201 (b) (21). The note in the present case had a special endorsement to JPMorgan Chase Bank, as trustee. Therefore, the plaintiff is not the holder of the note. Accordingly, the plaintiff can enforce the note only if it can demonstrate that it is a nonholder in possession of the note with the rights of a holder. See General Statutes § 42a-3-301. To do so, the plaintiff must prove that the transferor delivered the note to the plaintiff intending to vest in it the right to enforce the instrument. See General Statutes §§ 42a-3-203 (a) and 42a-3-301. In other words, as the assignee of the mortgage with a note specially endorsed to another entity, in order to have standing to foreclose, the plaintiff must demonstrate that it is the holder of the note that has been vested with the right to enforce the note.

As this court has recognized, “[w]ith respect to the plaintiff’s ultimate burden, however, we note our agreement with other courts that have recognized that [i]t is a fundamental precept of the law to expect a foreclosing party to actually be in possession of its claimed interest in the note, and have the proper supporting documentation in hand when filing suit, showing the history of the note, so the defendant is duly apprised of the rights of the plaintiff. . . . Therefore, in cases in which a nonholder transferee seeks to enforce a note in foreclosure proceedings, if the [defendant] dispute[s] the plaintiff’s right to enforce the note, the plaintiff must prove that right.” (Citations omitted; internal quotation marks omitted.) *J.E. Robert Co.* v. *Signature Properties, LLC,* supra, 309 Conn. 325–26 n.18.

Moreover, “[a]ffidavits are insufficient to determine the facts unless, [as with] summary judgment, they disclose that no genuine issue as to a material fact exists. . . . In almost every setting [in which] important decisions turn on questions of fact, due process requires an opportunity to confront and cross-examine adverse witnesses. . . . When issues of fact are necessary to the determination of a court’s jurisdiction, due process requires that a trial-like hearing be held, in which an opportunity is provided to present evidence and to cross-examine adverse witnesses.” (Citations omitted; internal quotation marks omitted.) *Standard Tallow*

*Corp.* v. *Jowdy*, 190 Conn. 48, 56, 459 A.2d 503 (1983); see also 1 E. Stephenson, Connecticut Civil Procedure (2d Ed. Cum. Supp. 1982) § 108 (d), p. S73.[8]

Because the question of the plaintiff's standing to bring the foreclosure action in the present case turns on questions of fact, namely, whether the plaintiff has been vested with the right to enforce the note, the trial court should not have denied the motion to open but should have conducted an evidentiary hearing to determine whether the plaintiff had standing to bring the foreclosure action in the present case. Accordingly, we conclude that the judgment of the Appellate Court cannot be upheld on this alternative ground.

The judgment of the Appellate Court is reversed and the case is remanded to that court with direction to remand the case to the trial court for further proceedings consistent with this opinion.

In this opinion the other justices concurred.

* December 20, 2022, the date that this decision was released as a slip opinion, is the operative date for all substantive and procedural purposes.

[1] Geeta A. Joshi-Tope also was named as a defendant in the underlying foreclosure action, but she is not a party to this appeal. In the interest of simplicity, we hereinafter refer to Achyut M. Tope as the defendant.

[2] The full name of the plaintiff is The Bank of New York Mellon, formerly known as The Bank of New York, as Successor to JPMorgan Chase Bank, N.A., as Trustee for Structured Asset Mortgage Investments II, Inc., Bear Stearns Alt-A Trust, Mortgage Pass-Through Certificates, Series 2004-3.

[3] We originally granted the defendant's petition for certification to appeal from the judgment of the Appellate Court limited to one issue, namely, whether the Appellate Court correctly concluded that the defendant's motion to open constituted a collateral attack on the judgment of foreclosure by sale. See *Bank of New York Mellon* v. *Tope*, 336 Conn. 950, 251 A.3d 618 (2021). Thereafter, we superseded our previous order and certified two issues for appeal: "1. Did the Appellate Court correctly conclude that the . . . defendant's challenge to the plaintiff's standing to prosecute this action, and, thus, the trial court's subject matter jurisdiction to adjudicate the matter, represented an improper collateral attack on one or more of the earlier judgments rendered by the trial court in favor of the plaintiff?" And "2. [i]f the answer to the first certified question is 'no,' should the judgment of the Appellate Court be affirmed on the alternative ground that the trial court properly had denied the . . . defendant's motion to open, in which the . . . defendant claimed that the trial court lacked subject matter jurisdiction?" *Bank of New York Mellon* v. *Tope*, 339 Conn. 901, 260 A.3d 483 (2021).

[4] Judge Devlin dissented, concluding that the defendant's motion to open challenging the plaintiff's standing was not an impermissible collateral attack and should be considered on the merits. *Bank of New York Mellon* v. *Tope*, supra, 202 Conn. App. 557–58 (*Devlin, J.*, dissenting). Judge Devlin further reasoned that, because the trial court did not make any findings of fact on the record regarding the plaintiff's right to enforce the note, the case should be remanded to the trial court for further proceedings to determine the jurisdictional issue. Id., 563 (*Devlin, J.*, dissenting).

[5] General Statutes (Supp. 2022) § 52-212a provides in relevant part: "Unless otherwise provided by law and except in such cases in which the court has continuing jurisdiction, a civil judgment or decree rendered in the Superior Court may not be opened or set aside unless a motion to open or set aside is filed within four months following the date on which the notice of judgment or decree was sent. . . ."

Although § 52-212a has been amended since the events at issue in this appeal; see Public Acts 2021, No. 21-104, § 44; those amendments have no bearing on the merits of this appeal. In the interest of simplicity, we refer to the current version of the statute.

[6] Generally, "[i]n the context of an appeal from the denial of a motion to open [a] judgment, [i]t is well established in our jurisprudence that [when]

an appeal has been taken from the denial of a motion to open, but the appeal period has run with respect to the underlying judgment, [this court] ha[s] refused to entertain issues relating to the merits of the underlying case and ha[s] limited [its] consideration to whether the denial of the motion to open was proper. . . . When a motion to open is filed more than twenty days after the judgment, the appeal from the denial of that motion can test only whether the trial court abused its discretion in failing to open the judgment and not the propriety of the merits of the underlying judgment." (Internal quotation marks omitted.) *Connecticut Housing Finance Authority* v. *McCarthy*, 204 Conn. App. 330, 340, 253 A.3d 494 (2021).

However, "[t]his court has often stated that the question of subject matter jurisdiction, because it addresses the basic competency of the court, can be raised by any of the parties, or by the court sua sponte, at any time." (Internal quotation marks omitted.) *Peters* v. *Dept. of Social Services*, 273 Conn. 434, 441–42, 870 A.2d 448 (2005). Therefore, because the defendant's appeal from the denial of his motion to open raises an issue of subject matter jurisdiction, we address the merits of his subject matter jurisdiction claim. See, e.g., *Deutsche Bank National Trust Co.* v. *Thompson*, 163 Conn. App. 827, 831, 136 A.3d 1277 (2016) (addressing question of subject matter jurisdiction raised for first time on appeal).

[7] On the basis of the foregoing, the plaintiff established through its pleadings that it was in possession of the mortgage and that the mortgage had been assigned to it. Nevertheless, it is the holder of the note that has the right to foreclose on the property.

[8] Although this court previously has presumed from a silent record that the trial court acted properly and examined the documentation in the record to ensure that the plaintiff had standing to enforce the note; see, e.g., *Equity One, Inc.* v. *Shivers*, supra, 310 Conn. 132; because establishing standing in the present case would require the plaintiff to present additional evidence that is not contained in the record before the trial court—namely, that the specially endorsed note was transferred to the plaintiff with the intent that it be vested with the right to enforce it—such a presumption is not applicable in the present case.

---